Heyneman *v.* Blake.

## THE PEOPLE *ex rel.* HEYNEMAN *v.* BLAKE, County Judge of San Francisco.

The San Francisco Water Works—a company organized under the Incorporation Act of 1853, for the purpose of introducing into the city of San Francisco pure fresh water and supplying its inhabitants and public buildings with the same, and for the transaction of such other business relating thereto as might be necessary or proper—is a corporation within the Act of 1853, providing for the formation of "corporations for manufacturing, mining, mechanical, wharfing and dockage, or chemical purposes, or for the purpose of engaging in any species of trade or commerce, foreign or domestic."

Water, when collected in reservoirs or pipes, and thus separated from the original source of supply, is personal property, and is as much the subject of sale—an article of commerce—as ordinary goods and merchandise. Engaging in the business of furnishing it to the inhabitants of a city for equivalent considerations to be received, is engaging in "a *species* of trade or commerce" within the meaning of the Corporation Act of 1853. Ice companies organized to furnish the inhabitants of a city with ice, and gas companies organized to furnish them with gas, and the company in question organized to supply them with water, all stand upon the same footing. They are engaged "in a species of trade or commerce," though not in the technical acceptation of the terms "trading" or "commercial corporations."

The San Francisco Water Works Company—organized in June, 1857, under the Act of 1853, and the Act of 1855 amendatory thereof—has power to condemn private lands in accordance with the Act of April, 1858, "For the Incorporation of Water Companies," whether the company be reincorporated under the Act of 1858 or not.

The sixth section of the Act of 1858, which provides that any corporation heretofore formed for the purposes specified in the act "shall have the *right* to reincorporate," etc., is not mandatory, but permissive only; and it is not necessary that the corporation reincorporate in order to become the recipient of the privileges and benefits intended by the act.

Whether the lands in question here were required for the purposes of the company was a matter to be determined by the County Judge upon a proper showing before him.

The fact that the Board of Supervisors of San Francisco by an order, ratified by the Legislature, gave the company the privilege of laying pipes along the public streets of that city, does not operate as a restriction upon the right to condemn private lands under the Act of 1858 in cases where the purposes of the company require the use of such lands.

The right to condemn private *lands* under the Water Company Act of 1858, in accordance with the proceedings prescribed in the Railroad Act of 1853, includes the right to condemn any *estate or interest* in the land necessary for the purposes of the company. And hence the company may seek in its petition for condemnation only the right of excavating a tunnel through the land, and of running pipes through the tunnel to convey its water, without seeking to obtain a title to the land.

Heyneman *v.* Blake.

Even when the petition in such cases seeks to condemn the land itself, and the land is in terms condemned, it is questionable whether the *title* passes absolutely to the corporation.

The prevailing doctrine upon this subject is, that the title vests in the corporation only to the extent necessary for the purposes of the corporation.

The provision of the Water Company Act of 1858, directing that the compensation to the owners of the land condemned shall be estimated by Commissioners, as in the Railroad Act of 1853, instead of a jury, is constitutional.

*Koppikus* v. *State Capitol Commissioners,* (16 Cal. 248) upon this question, affirmed.

The same rule prevails whether the question be as to the value of the property taken, or as to the extent of the damages which the owner may sustain from the *use* made of his property. In either case the proceedings, so far as the Constitution is concerned, may be with or without a jury, as the statute directs.

APPEAL from the Fourth District.

December 5th, 1860, the San Francisco Water Works Company filed a petition with the Judge of the county of San Francisco, addressed to said Judge, alleging in substance that petitioners are a corporation duly organized under the laws of this State, and particularly under and in conformity to "An Act to Provide for the Formation of Corporations for Certain Purposes," passed April 14th, 1853, and amended by an Act of April 30th, 1855, and under an act passed April 22d, 1858, entitled "An Act for the Incorporation of Water Companies;" that said corporation was organized as aforesaid for the purpose of introducing pure fresh water into the city and county of San Francisco for supplying the inhabitants thereof and the public buildings therein with the same, and to do and transact such other business properly relating to said purpose as might be necessary; that the incorporation of said company was effected by three persons, citizens of said State, who in that behalf on the thirteenth day of June, 1857, filed in the office of the County Clerk of the city and county of San Francisco, a certificate in writing, etc., [here follow a particular account of the steps taken to incorporate, and the contents of the certificate] that said corporation, after its organization as aforesaid, was duly licensed by an order of the Board of Supervisors of said city, and county, approved August 6th, 1857, to introduce water for the purposes aforesaid from the "Lobos creek," so called, which order, known as order No. 46, is made part of the petition; that upon the

passage of said order petitioners, as such corporation, at once entered upon the prosecution of their said enterprise, and thence hitherto have continuously and regularly prosecuted the same ; that said order was approved and ratified, and the existence of said corporation recognized by an Act of the Legislature of March 18th, 1858, entitled " An Act for the Incorporation of Water Companies," and that the existence of said corporation was also recognized by an Act passed April 12th, 1860, entitled " An Act to Ratify and Confirm Order No. 172 of the Board of Supervisors of the City and County of San Francisco," to all of which acts and orders reference is made ; that to promote and acccomplish the corporate purpose and object set forth as aforesaid, it was requisite and necessary that the said corporation should secure to itself and acquire the right to excavate and maintain an underground tunnel for the purpose of laying down and maintaining therein two lines of iron pipe, with a right of way into, through and out of said tunnel for the purpose aforesaid ; the position and dimensions of said tunnel and the lands through which the same is to pass are described as follows, to wit : [a particular description of certain land in the city of San Francisco is here given] ; that it was requisite and necessary to a fulfillment of the corporate objects of the petitioners, that the corporation should hold, use and take possession of and appropriate so much of the lands aforesaid as might be needful for the construction of said tunnel, and to vest in them the right of way to the extent of said tunnel ; that the lot belongs to Leonard D. Heyneman, resident in said city ; that there are of record, or to the knowledge of petitioners, no incumbrances on said lot.   Prayer that Commissioners be appointed to ascertain the compensation to be made to the owner for taking or injuriously affecting said lands, and that the lands, to the extent hereinbefore stated, may be condemned to the uses of the corporation.

Notice was served upon Heyneman, that on the eleventh of December, 1860, petitioners would apply to the County Judge for the appointment of Commissioners, as prayed for in the petition.   On the seventeenth of December, to which day the hearing was adjourned by consent, Heyneman, by counsel, objected to granting the prayer of the petition, upon the ground that the matters therein et forth were not sufficient in law.   Objection overruled.

Petitioners then put in evidence : first, the several acts of the Legislature referred to in the petition ; second, copies of the certificate of incorporation of the company from the County Clerk's office, and from the office of the Secretary of State ; third, orders of the Board of Supervisors Nos. 46 and 172 referred to ; fourth, certificate of the incorporation of the water company, dated May 14th, 1858, filed in County Clerk's office of San Francisco same day.

Petitioners then introduced witnesses to prove that they had been acting as a corporation, and laying down pipes in San Francisco, and constructing reservoirs, etc., for the past two and a half years ; that the lands sought to be condemned are necessary for the purposes of the company, and have not been acquired by the company by gift, purchase or otherwise ; that an effort had been made by the company to purchase of Heyneman the rights named in the petition, but that they could not agree, and that the title to the land stood on the record in Heyneman's name.

It was then admitted that he was the owner.

Counsel of Heyneman then moved to dismiss the petition upon the evidence offered. Overruled, and exceptions taken. He then asked a stay of proceedings, to enable him to apply for *certiorari*. Refused. Whereupon the County Judge appointed five Commissioners, " to ascertain the compensation to be made to Leonard Heyneman by the said San Francisco City Water Works for the taking or injuriously affecting the lands, real estate, property and rights set forth in the aforesaid petition," and appointed a day and place for the first meeting of the Commissioners.

Heyneman then applied to the Fourth District Court for a writ of *certiorari*, to review the proceedings had before the County Judge—the petition for the writ setting forth those proceedings, and averring mainly that the Judge had exceeded his jurisdiction, because, first, the Water Works Company were not a corporation ; second, that said company had no power to condemn private lands for their use ; third, that the property of a citizen cannot be appraised and taken from him without his consent or trial by jury ; fourth, that by a contract of petitioners with the city, by ordinances confirmed by the Legislature, and referred to in the petition to the

County Judge, the company is required to lay its pipe through the public streets of San Francisco, and not through private property.

The writ was issued by consent of defendant, his return made setting forth the proceedings hereinbefore named; and after a hearing, the proceedings before the County Judge were annulled.

The following are the sections of the most important acts which are referred to in the briefs of counsel and the opinion of the Court. The first section of the Act of April 14th, 1853, entitled "An Act to Provide for the Formation of Corporations for Certain Purposes," is as follows:

"SECTION 1.   Corporations for manufacturing, mining, mechanical or chemical purposes, or for the purpose of engaging in any species of trade or commerce, foreign or domestic, may be formed according to the provisions of this act; such corporations, and the members thereof, being subject to all the conditions and liabilities herein imposed, and to none others."

This section was amended by the Act of April 30th, 1855, entitled "An Act to amend an Act entitled 'An Act to Provide for the Formation of Corporations for Certain Purposes,' passed April 14th, 1853," so as to read as follows:

"SECTION 1.   Section first of said act is amended so as to read as follows: 'Corporations for manufacturing, mining, mechanical, wharfing and dockage or chemical purposes, or for the purpose of engaging in any species of trade or commerce, foreign or domestic, may be formed according to the provisions of this act; such corporations, and members thereof, being subject to all the conditions and liabilities herein imposed, and to none others.'"

The first, second and sixth sections of the Act of April 22d, 1858, entitled "An Act for the Incorporation of Water Companies," are as follows:

"SECTION 1.   The provisions of an act entitled 'An Act to Provide for the Formation of Corporations for Certain Purposes,' passed April 14th, 1853, and the provisions of an act entitled 'An Act to amend an Act entitled an Act to Provide for the Formation of Corporations for Certain Purposes, passed April 14th, 1853,' and passed on the thirtieth day of April, 1855, shall extend to

and apply to all corporations already formed, or hereafter to be formed, under said acts, for the purpose of supplying any city and county, or any cities or towns, in this State, or the inhabitants thereof, with pure fresh water.

" SEC. 2.   Any company incorporated for the purposes specified in the preceding section shall have the right to purchase, or to appropriate and take possession of, and use and hold, all such lands and waters as may be required for the purposes of the Company, upon making compensation therefor.   The mode of proceeding to appropriate and take possession of such lands and waters, when the parties cannot agree upon a purchase thereof, shall be the same as prescribed in sections twenty-seven, twenty-eight and twenty-nine of ' An Act to Provide for the Incorporating of Railroad Companies,' passed April 22d, 1853, except that such proceedings shall be had before the County Judge of the county in which such lands or waters, or both, may be situated ; *provided*, that all reservoirs, canals, ditches, pipes, aqueducts, and all conduits heretofore built, or that hereafter may be constructed, by any corporation formed under this act, or claiming the privileges, rights and immunities herein granted, or any of them, shall be used exclusively for the purpose of supplying any city and county, or any cities or towns, in this State, or the inhabitants thereof, with pure fresh water.

" SEC. 6.   Any corporation heretofore formed for the purposes specified in this act shall have the right to reincorporate under the provisions of this act, without losing, forfeiting or diminishing any of the rights, privileges, franchises or immunities which they have heretofore lawfully acquired."

The twenty-eighth section of the Act to provide for the incorporation of railroad companies, passed April 22d, 1853, referred to in section two of the Act of April 22d, 1858, above given, and the only section of the Railroad Act material to the present case, declares, in substance, that until otherwise provided by law, any company organized under the act " may enter upon, take possession of and use all such real estate and property as may be required for the construction and maintenance of a single or double track railroad, and the convenient accommodations appertaining to the same, by complying with the following provisions : whenever the said corpo-

ration shall not have acquired by gift or purchase any land, real estate or property, so required as aforesaid, or which may be affected by any operation connected with such construction and maintenance, it shall be lawful for the company (by a petition signed by its attorney or agent, describing with convenient accuracy and certainty, by map or otherwise, the lands, real estate or property so required to be taken or to be affected, setting forth the name and residence of each owner, or other persons interested therein as owner, claimant, tenant, lessee or incumbrancer, so far as known to such attorney or agent, or appearing of record) to apply to the Judge of the District Court, either in term time or vacation, of the county where the said lands, real estate or property shall lie, praying the appointment of commissioners to ascertain the compensation to be made to such owners and persons interested, for the taking or injuriously affecting such lands, real estate or property as aforesaid ; " that the Judge, after being satisfied that a certain notice of the application has been given to the owners and persons interested in the lands, shall, by an entry in his minutes, appoint five competent and disinterested persons as commissioners to ascertain such compensation, the commissioners to be sworn, and to take testimony, and then, after viewing the premises, three or more to " ascertain and certify the compensation proper to be made to said owners and parties interested for the land, real estate and property so to be taken or injuriously affected," etc., and to file with the County Clerk of the county where the lands lie a certificate of the ascertainment and assessment, describing the lands by maps or otherwise with convenient certainty ; that either party aggrieved by the decision of the Commissioners may appeal to the Supreme Court as in other cases tried before the District Court— the appeal not to prevent the company from proceeding with their work, or retaining or taking possession of such lands, etc., as may be necessary for the successful prosecution of the road ; that the Court or Judge, upon such certificate being filed, and upon proof that the assessment has been paid to the proper parties or deposited with the Clerk of the Court, shall enter in his minutes a rule describing the lands, the assessment, mode of making it, and the payment or deposit of the amount of such assessment—a copy of

38

the rule to be recorded in the County Recorder's Office as a deed—the company, upon the entry of such rule, being authorized to " use and occupy all lands, real estate and property described in said rule as required to be taken as aforesaid during the continuance of the corporation," by that or any subsequent act, and to " take possession of what they are not at the time in possession of, and hold and use all described in said rule for the purposes of said road, or otherwise for the benefit of the company, and shall thereupon be discharged from all claims for damages by reason of any matter specified in the said petition, certificate or rule of Court; " that if, after such attempted ascertainment of compensation, it shall appear that the proceedings were defective, and that the title acquired thereby for the use of the road fails in whole or in part, then new proceedings may be had, etc.

*O. L. Shafter*, for Appellant.

I.    The company is a corporation by virtue of its organization, under the Act of 1853.

The phrase " or for the purpose of engaging in any species of trade or commerce," is broad enough to comprehend a company formed for the purpose of trading or dealing in water as a commodity.

The construction should be liberal ; for corporations organized under our general laws are not monopolies.

The term " trade " has an ascertained meaning in the law of landlord and tenant.    It is said that buildings erected by the tenant for trade ; that is, for the better enjoyment of his estate created by the lease, are subject to removal by the tenant at the expiration of his term.    Thus a tenant may remove a wooden dwelling-house with a cellar of stone or brick, and a brick chimney erected by him for the business of a dairyman, and the residence of those engaged in it.    (*Van Ness* v. *Pacard*, 2 Pet. 137 ; 1 Hilliard Real Prop. 67.)    Here the term " trade " is not used as synonymous with the term " traffic " in the popular import of the word, but as the synonym of the term " employment," comprehending all the varied details connected with the husbandry of land.

But to include the business for which this water company was

organized, within the meaning of the term " trade," its popular import needs not to be extended.

The corporate object of the company was and is to bring to the city the waters of the Lobos creek, for the purpose of selling them to consumers.   The mode of bringing them from the source of supply to the place of sale is a matter of method or form merely. It may be by means of casks mounted upon wheels drawn by mules, and it may be by means of flumes, aqueducts and pipes as well; and whether delivered in pails or through stop cocks to consumers, the essential character of the transaction, as being within or without the meaning of the term " trade," would not be affected.

However the waters may be brought to market; however the result of delivery to consumers may be accomplished, the transaction as between the company and the purchaser is an act of traffic, an act of sale, an act of "trade."   The water contained in the reservoirs, and in the main and service pipes of the company, is doubtless personal property, as much so as if placed by the company in casks; and when drawn by the consumer, the quantity drawn becomes his property as by vendition.

The Russian Ice Company is a corporation, organized for the purpose of quarrying ice in another jurisdiction and bringing it to the city of San Francisco for sale.   The San Francisco Gas Company is a corporation, organized for the purpose of supplying gas for general consumption in the city.   As means to this end, it buys lands, erects expensive buildings and works, uses reservoirs, pipes, meters and stop cocks as means of delivering its commodity to consumers.   But both of the companies named are engaged in " trade," or at least, in " a species of trade," in the common and popular import of that term.   If they are not, then they are not corporations; for there is no statute in which the incorporation of such companies is specially provided for.

Lumber companies have also been extensively organized under the Act of 1853.   The final outcome of all their operations is the sale of manufactured lumber.   But to reach that result, they begin with the purchase or occupation of land; they sever standing trees from the freehold, and thereby transmute them into personal property; and erect and run mills for the purpose of turning their logs into marketable forms.

Heyneman *v.* Blake.

The ice and gas companies named, lumber companies and this water company, are all of them embarked on a common bottom.

The correspondences between them are too numerous and striking to be overlooked.   If the ice company " trades " in ice ;  if the gas company " trades " in gas ;  if lumber companies " trade " in lumber, then, by parity, the San Francisco Water Company is a " trader " in water.

II.   The company is also a corporation by virtue of the Act of 1858.

The first section of that act extends the Act of 1853, so as to include all water companies that may have been formed under it. This statute does not purport to have been passed for the relief of any particular company, and is not obnoxious, therefore, to the charge of " special legislation."   The act was both wise and just. Water companies had been formed in cities and in the mines under the Act of 1853.   Capital in large amounts had been invested in them, and these enterprises were in an eminent degree promotive of the public good.   But there was or might be a doubt as to whether they were included within the letter of the Act of 1853. To dispel that doubt the Act of 1858 was passed.

But it is urged that no water company can claim the benefit of the Act of 1858 without " reincorporating under its provisions " as provided in section six.

In answer to this objection, we insist that the first section legitimates the corporations to which it refers without further ado.   " Reincorporation," as spoken of in the sixth section, presupposes that the result of incorporation has been accomplished by the direct action of the first section.   How can a company be reincorporated that has never been incorporated ?

Again :  the language of the sixth section is not mandatory.   That section does not say that the companies, for whose benefit it was passed, shall reincorporate, nor even that they may reincorporate, but simply that they " shall have the *right* to reincorporate."

Again: such incorporation would be attended with no results either of detriment or advantage to the company or to the public, for the sixth section provides that the reincorporating shall be " without loss, forfeiture or diminution of any of the rights, privileges,

franchises or immunities which they (the companies) may have heretofore lawfully acquired."

The process of reincorporating would be but a reproduction of the process followed by the company in incorporating under the Act of 1853; and no principle of law requires that the sixth section of the Act of 1858 should be so construed as to require this company to duplicate that process in order to secure to itself the advantages at once tendered and conferred by section one.

III.   The company has the power conferred upon it to condemn private lands.

The Act of April 22d, 1858, whereby all manner of water companies were " permitted " to enter the city without restriction as to lines of travel, or as to the places at which their reservoirs should be located, or as to the manner in which their reservoirs should be connected, contains a direct grant of power to them to condemn private lands.

IV.   The land is necessary for the purposes of the company.

1. The necessity referred to by the Acts of 1853 and 1858 has reference to the particular line of transit or travel which the company has selected.

A railway company is incorporated with reference to certain termini.   There may be many particular and a still larger number of possible lines by which the two termini may be connected. But the company, in the exercise of its right, selects a particular line and rejects all the others.   It then addresses itself to the work of condemnation.   Thereafter, the only question that can be asked is this: Are the lands called for necessary to the line so selected ? To argue that they are not necessary, for the reason that the route might have been located upon a different line, would be clearly fallacious, for if that reasoning should be pushed to its consequences, the power to condemn could be baffled indefinitely.

2. The fact of necessity was found by the Judge on the evidence before him, and that question of fact cannot be readjudged on *certiorari;* and this would be equally true whether the fact be regarded as jurisdictional, or as having relation to the merits.   In either case, the fact would be for the Judge.

V.   The act under which the proceedings in condemnation were

taken is constitutional. (*Koppikus* v. *The State Capital Commissioners*, 16 Cal. 248.)

*B. S. Brooks*, for Respondent.

I. The San Francisco Water Works are not a corporation. The Act of 1853 and amendatory Act of 1855 do not include nor authorize the formation of corporations for the purpose of introducing water into cities.

II. The "Act for the Incorporation of Water Companies," passed April 22d, 1858, did not have the effect to give vitality to them; to ratify the acts of attempted incorporation and make them a corporation. Such was the intention of the act. And if it is possible for the Legislature to incorporate a company, then this object was effected, and they are a corporation. But the Legislature had no power to incorporate them.

1. The Constitution (Art. 4, sec. 31) says: "Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes."' The meaning of this is clear, and the Legislature has carried this provision into effect by various general laws authorizing the formation of corporations, and under which various corporations have been formed. It requires that the laws shall be first passed providing how corporations may be formed, and then leaves the companies to do the necessary acts in conformity with the provisions of these acts to make them corporations. The second branch of this section is equally clear: "but shall not be created by special act." The Legislature could not, under this provision, by a special act create the San Francisco Water Works a corporation, and it could do no better by a general description than by name.

2. The Legislature can only provide for the formation of corporations in future; it cannot incorporate by force of an act any body already in existence. If, therefore, the San Francisco Water Works were not a corporation by virtue of the Act of 1853, the Act of 1858 is ineffectual to create them a corporation.

III. Even if the San Francisco Water Works were a corporation—that is, if the Act of 1858 was effectual to create them a corporation, it does not confer upon them the franchise of exercis-

ing the right of eminent domain. This right can only be delegated to private individuals or corporations by express grant, and not by intendment or construction. Now it will be perceived that the first section of the Act of 1858 only extends to the San Francisco Water Works the provisions of the Act of 1853, and that act does not confer upon the corporations formed under it the franchise of exercising the right of eminent domain. The subsequent sections of the Act of 1858 confer upon companies incorporated for the purpose of introducing water the franchise in question, but it was not the intention to confer that right upon corporations already formed, because the sixth section provides that " any corporation heretofore formed for the purpose specified in this act shall have the right to reincorporate under the provisions of this act." It was evidently the intent, therefore, of the act, that in order to obtain the right to exercise this franchise, they should reincorporate under the act. The section would otherwise be useless and meaningless.

IV.   The exercise of the franchise in the manner proposed by the company in this proceeding is not authorized by the act.

The water company do not seek nor ask to obtain a title to the land, or any portion of it, but only the right or privilege of digging a tunnel through it, and running a pipe through that tunnel to convey their water. They have not asked to have the land or any part of it appraised, but simply and only the value of the privilege, easement or servitude of digging this tunnel through our land and running their pipe through it—a sort of underground right of way. Now it is very clear that the Legislature did not intend anything of the kind. The Act of 1858 authorizes the company to purchase, appropriate and take possession of lands and waters, when the parties cannot agree upon a purchase thereof, but there is no right conferred of appropriating an easement merely. There is an obvious distinction. It is comparatively easy for a jury to estimate the value of a piece of land upon the testimony of competent witnesses who are familiar with the value of lands at that point ; but how can any one estimate the injury to the owner of the land by the use of an easement ? The Legislature very wisely has not conferred this power on any corporation, and least of all, these companies. It has said : If you wish to use any land, you shall take

the land and pay for it, and not merely take and pay for your use of it.

V. The land in question is not necessary for the purposes of the company. The power conferred by the act is to take such lands as are necessary for the company. It may be that it is more convenient for the company to run its pipes through this land, but it is not necessary. By the law and ordinance of the city, the company has already the right to lay its pipes through the streets. The ordinance is a contract between the city and company, and having been ratified by the Legislature, is a law binding upon the company in all its restrictions. By the provisions of this law, the mode in which the company shall exercise this right is specially limited and defined. Section one provides, that the San Francisco Water Works Company shall commence their aqueduct at the mouth of Lobos creek, thence following along the shore of the bay to a point at North Beach near the foot of Taylor street, (afterwards altered to Van Ness Avenue, Laws of 1860, 170) at which point they are to construct a reservoir. By section two they are required to elevate their water from this reservoir to two others, the upper not less than two hundred and fifty feet above the base of city grades, " and the said company shall connect with said reservoirs suitable iron pipes, to be by them laid down through the streets and alleys of said city and county, under the direction of the Board of Supervisors, capable of supplying and discharging not less than two millions of gallons of water every twenty-four hours." It will be perceived that it is not left to the discretion of the company to lay their pipes where they please, but they are required to lay them down through the streets and alleys, and not alone the discharging pipes, but the supply pipes as well. It was the evident intention of the Legislature not to permit the company to run their pipes through the lots and private property of citizens, but to confine them to the public streets.

VI. The act in providing that the compensation to be made to the owners shall be estimated by Commissioners instead of by a jury, is unconstitutional.

1. It is a plain violation of the third section of article one of the Constitution, which provides that " the right of trial by jury shall

be secured to all and remain inviolate forever." ( *Work* v. *The State of Ohio*, 22 Ohio S. R. 290 ; *Enderman* v. *Ashby*, Pr. Dec. 65 ; *Stidger* v. *Rogers*, Id. 64 ; *Carson* v. *Commonwealth*, 1 A. K. M. 290 ; *Hughes* v. *Hughes*, 4 Monroe, 44 ; Sedgwick on Const. and Stat. Law, 527, 528, 542, 546, 549 ; *Stewart* v. *The Mayor*, 7 Maryland, 501 ; *Van Horne's Lessee* v. *Dorrance*, 2 Dall, 313 ; *Clark* v. *Utica*, 18 Barb. 451 ; *Armstrong* v. *Jackson*, 1 Blackf. 375.)

2. It is contrary to the provisions of section eight, article one, of the Constitution, which provides that no one " shall be deprived of life, liberty or property without due process of law." " By the law of the land is most clearly intended the general law, which hears before it condemns ; which proceeds upon inquiry and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property and immunities under the protection of general rules which govern society. Everything which may pass under the form of an enactment is not the law of the land." (Daniel Webster on the *Dartmouth College case; Taylor* v. *Parker*, 4 Hill, 140 ; Sedgwick on Const. and Stat. Law, 537, 242.)

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

The material questions presented for determination in this case are : 1st, whether the San Francisco City Water Works became a corporation by the proceedings taken under the Act of April 14th, 1853, providing for the formation of corporations for certain purposes ; 2d, whether, if a corporation, the company became invested by the Act of April 22d, 1858, with the power to condemn private lands in the execution of the purposes of the incorporation ; and 3d, whether the latter act, in providing that the compensation to the owners for the lands taken or injuriously affected shall be estimated by Commissioners appointed by the County Judge, instead of by a jury, is constitutional.

1. The first section of the Act of April 14th, 1853, as amended by the Act of April 30th, 1855, provides for the formation of " corporations for manufacturing, mining, mechanical, wharfing and dockage, or chemical purposes, or for the purpose of engaging in

Heyneman *v.* Blake.

any species of trade or commerce, foreign or domestic," and the first inquiry is, whether the purpose or business for which the company known as The San Francisco City Water Works was formed, is embraced within the provisions of this section. The company was organized, according to the language of its articles of incorporation, for the purpose of introducing pure fresh water into the city and county of San Francisco, and supplying the inhabitants and the public buildings with the same, and the transaction of such other business relating thereto as might be necessary or proper. The purpose thus declared, it is contended, is not embraced within any of the terms of the act. We do not think so. The language, " for the purpose of engaging in any species of trade, foreign or domestic," is sufficiently comprehensive to include companies formed for the purpose contemplated by the company in question. Though the sale of the water to be introduced is not mentioned in the articles of incorporation, it is evident that this was the object which the corporation had in view. It was to deal in water as a matter of business—to furnish the article to consumers upon considerations to be received—that the company was formed. Water, when collected in reservoirs or pipes, and thus separated from the original source of supply, is personal property, and is as much the subject of sale—an article of commerce—as ordinary goods and merchandise. Engaging in the business of furnishing it to the inhabitants of a city for equivalent considerations to be received, is engaging in " a *species* of trade or commerce " within the meaning of the act. Ice companies organized to furnish the inhabitants of a city with ice, and gas companies organized to furnish them with gas, and the company in question organized to supply them with water, all stand upon the same footing. They are engaged " in a species of trade or commerce," though not in the technical acceptation of the terms " trading " or " commercial corporations."

2. The second section of the " Act for the Incorporation of Water Companies " of April, 1858, grants to all companies incorporated under the Act of 1853, for the purpose of supplying any city, town or county of the State, or the inhabitants thereof, with pure water, " the right to purchase or to appropriate and take possession of, and use and hold all such lands and waters as may be

required for the purposes of the company, upon making compensation therefor," and provides that the mode of proceeding in cases where the parties cannot agree upon a purchase of such lands and waters, shall be the same which is prescribed by certain sections of the act for the incorporation of railroad companies of April, 1853, except that the proceedings shall be taken before the County Judge of the county where the lands or waters are situated.   This section clothed the San Francisco Water Works with ample power to condemn the lands described in the petition to the County Judge, provided they were required for the purposes of the company.   The possession of the power does not depend, as contended by the respondent, upon a reincorporation of the company.   The sixth section of the act is not mandatory, but permissive only.   Its language is that any corporation heretofore formed for the purposes specified in in the act " shall have the *right* to reincorporate," not that it shall be reincorporated in order to become the recipient of the privileges and benefits intended by the act.

Whether the lands in question were required for the purposes of the company was a matter to be determined by the County Judge, upon a proper showing had before him.   We do not see anything in the record relating to his action in this respect which impeaches the correctness of his determination.   The order of the Board of Supervisors of the city of San Francisco, approved and ratified by the Legislature, conferred upon the company the privilege of laying pipes along the public streets, (Session Laws of 1858, 75) but this privilege does not operate as a restriction upon the right to condemn private lands granted by the Act of 1858, in cases where the purposes of the company require the use of such lands.

There is nothing in the objection that the company only seeks the right and privilege of excavating a tunnel through the land of the respondent, and of running pipes through the tunnel to convey its water, and does not seek to obtain a title to the land.   The petition to the County Judge alleges the necessity of constructing the tunnel and acquiring a right of way into and through it, and for that purpose of taking possession of and appropriating a portion of the lands described ; and that the company has been unable to agree with the owner for a purchase of the same, and prays for the

appointment of Commissioners to ascertain the compensation to be made to the owners " for taking or injuriously affecting " the lands, and that the same, to the " extent stated," may be condemned for the uses of the company. The petition, in this respect, complies substantially with the provisions of the Railroad Act of 1853. That act contemplates that the Commissioners shall ascertain the compensation to be made " for the taking or injuriously affecting " the lands. But independent of this, the right to condemn the lands includes the right to condemn any estate or interest therein which may be necessary for the purposes of the company. And even where the lands are in terms taken, it may be questioned whether the title passes absolutely to the corporation. The prevailing doctrine in such cases is, that the title vests only to the extent necessary for the purposes of the incorporation. " The general course of decisions in this country," says Redfield, " coincides with the English common law rule, in regard to the title acquired by the public, by the exercise of the right of eminent domain; that is, that no more of the title is divested from the former owner, than what is necessary for the public use. The owner may still maintain trespass for any injury to the freehold by a stranger. And in regard to railways in particular, it has been repeatedly decided in the different States that they take only an easment in land condemned for their use." (Treatise on the Law of Railways, 126; *Hooker* v. *Utica and Minden Turnpike Company*, 12 Wend. 371; *The People* v. *White*, 11 Barb. 26; *Giesy* v. *Cincinnati, Wilmington and Zanesville Railway*, 4 Ohio, 308; *Barclay* v. *Howell's Lessee*, 6 Pet. 498.)

3. The constitutionality of the provision of the Act of 1858, directing that the compensation of the owners shall be estimated by Commissioners instead of by a jury, is settled by the case of *Koppikus* v. *State Capitol Commissioners* (16 Cal. 248). We there held that the clause of the Constitution declaring that " the right of trial by jury shall be secured to all and remain inviolate forever," applies only to civil and criminal cases in which an issue of fact is joined, and that where private property is taken for public use it is only necessary that the proceedings to ascertain the value of the property, and the compensation to be made to the owner, be con-

ducted in some equitable and fair mode, to be provided by law, either with or without the intervention of a jury, opportunity being allowed to the owners or parties interested in the property to present evidence respecting its value, and to be heard thereon. And the same rule prevails, whether the question be as to the value of the property taken, or as to the extent of the damages which the owner may sustain from the use made of his property.

It follows from the views we have expressed, that the judgment of the District Court, annulling the proceedings taken before the County Judge is erroneous. That judgment must therefore be reversed and those proceedings affirmed; and it is so ordered.